**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

GREAT AMERICAN E&S INSURANCE
COMPANY,

      Plaintiff,

      v.

AY TRUCKING, INC. and
ANDRIY PRIONYUK,

      Defendants.

Civil Action No.:

**COMPLAINT FOR
DECLARATORY JUDGMENT**

Plaintiff, Great American E&S Insurance Company ("Great American" or "Plaintiff"), by and through its undersigned counsel, comes now before this Honorable Court and files this Complaint for Declaratory Judgment against Defendants, AY Trucking, Inc. and Andriy Prionyuk, and in support thereof, states as follows:

## I.      NATURE OF THE ACTION

1.      This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202, and Rule 57 of the Federal Rules of Civil Procedure.  Plaintiff seeks a determination that it owes no duty to indemnify its named insured, AY Trucking, Inc. ("AY") and Andriy V. Prionyuk ("Prionyuk") under a Commercial Umbrella and Excess Liability Insurance Policy issued by Great American to AY ("the Excess Policy").

2.      Excess liability coverage is at issue between Plaintiff and Defendants in connection with underlying claims asserted by Eric K. Davis ("Underlying Claimant") against AY and Prionyuk in an action presently pending in the Philadelphia County Court of Common Pleas ("the Davis Action") for injuries he sustained in a trucking accident on April 30, 2017 ("the Underlying Accident").

3.      AY's primary insurer, American Alternative Insurance Corporation ("American Alternative") failed to raise certain coverage defenses during its investigation into coverage for the Underlying Accident and the defense of the Davis Action.  Namely, American Alternative failed to invoke potential defenses to coverage based on: (1) Prionyuk's status as a "motor carrier for hire" under the Federal Motor Carrier Safety Administration Regulations ("FMCSR"); (2) Plaintiff's status as a statutory "employee" of AY under the FMCSR; and/or (3) Plaintiff and Prionyuk's statuses as "fellow employees" in relation to one another and for AY.

4.      The Excess Policy follows form with the American Alternative primary policy, but Great American is not bound by American Alternative's decision-making.  Stated differently, Great American is entitled to raise and/or reserve defenses to primary insurance coverage for the Davis Action notwithstanding American Alternative's failure to do so.

5.      Had American Alternative raised and/or reserved the aforesaid coverage defenses at the appropriate time, Prionyuk would not qualify as an "insured" under AY's primary policy, American Alternative would only owe obligations to AY under its primary policy, and coverage for the Underlying Accident would have been excluded under the Excess Policy.

6.      In addition to provisions in AY's primary policy with American Alternative, there are independent defenses to coverage in the Excess Policy which warrant this Court's consideration.

7.      First, the Excess Policy contains a "cross-suits" exclusion which excludes coverage for an insured's liability for another insured's loss.  Thus, to the extent **Underlying Claimant** qualifies as an "insured" under the Excess Policy, there would be no coverage for the Underlying Accident.

8.      Second, on January 17, 2020—484 days after the filing of the Davis Action, and nearly one year after Underlying Claimant communicated a demand in excess of AY's primary policy limits—Great American received its first notice of the Underlying Accident and the Davis Action.  Because Great American was deprived of a reasonable opportunity to assess the myriad coverage issues for the Underlying Accident, it was prejudiced by this late notice, and a denial of coverage is warranted.

9.      Accordingly, Great American requests that this court issue a declaration in its favor holding that it owes no coverage or indemnification obligation to Defendants for the Underlying Accident.

## II.      THE PARTIES

10.     Plaintiff, Great American, is an insurance company with corporate offices at 301 East Fourth Street, Cincinnati, OH 45202.  Great American regularly conducts business within the Commonwealth of Pennsylvania and within this judicial district.

11.     Defendant, AY Trucking, Inc., is a motor carrier with corporate offices at 371 East Street Road, Feasterville-Trevose, PA 19053.  AY regularly conducts business within the Commonwealth of Pennsylvania and within this judicial district.

12.     Defendant, Andriy Prionyuk, is an adult individual who is believed to be a Washington domiciliary residing at 22324 100th Avenue, Kent, WA 98031.

## III.      JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

14.     A justiciable controversy exists between Plaintiff and Defendants within the meaning of 28 U.S.C. § 2201 with respect to Great American's duty to provide coverage and

3

indemnify Defendants under the Excess Policy for the claims asserted in the Davis Action, in connection with the Underlying Accident. See, e.g., ACandS, Inc. v. Aetna Casualty & Surety Co., 666 F.2d 819, 822-23 (3d Cir. 1981) (holding that declaratory judgment action regarding an insurer's duties in relation to an underlying lawsuit is ripe for review and disposition).

15.     Notably, the Davis Action is now scheduled for trial in June 2021; therefore, this matter is now ripe for this Honorable Court's consideration.

16.     This Court has diversity jurisdiction over this action pursuant to 23 U.S.C. § 1332(a)(1) because the this action is entirely between citizens of different states, and the amount in controversy—that is, the amount Great American may be obligated to expend to indemnify AY and/or Prionyuk—exceeds the sum or value of $75,000.00, exclusive of interest and costs.

17.     Jurisdiction is also proper based upon a federal question pursuant to 28 U.S.C. § 1331 because this declaratory judgment action requires resolution of a substantial and disputed federal issue regarding the application of the FMCSR definition of "employee" to an interstate trucking company's liability insurance policy purchased to satisfy the FMCSR insurance requirements.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as pled in greater detail below because the events and Underlying Accident giving rise to the Davis Action occurred in part within this judicial district, AY regularly conducts business within this judicial district, and the Davis Action is currently pending within this judicial district.

## IV.    FACTS COMMON TO ALL COUNTS

### The Underlying Accident and Davis Action

19.    On or about September 20, 2018, Underlying Claimant Eric K. Davis filed a Complaint in the Philadelphia Court of Common Pleas for injuries he sustained in the Underlying Accident.  See Complaint in the Davis Action attached hereto as **Exhibit A**.

20.    In his Complaint, Underlying Claimant alleged that at approximately 5:15 a.m. on April 30, 2017, Defendant Prionyuk was operating a 2016 Peterbuilt tractor-truck ("the Vehicle"), owned at the time by AY and entrusted to Prionyuk with AY's permission in furtherance of its business.  Id. ¶¶ 5-6.  At this time, Prionyuk was operating the Vehicle on I-80 near Pershing County, Nevada while Underlying Claimant was "lawfully in the sleeper compartment of the vehicle."  Id. ¶¶ 6-7.

21.    Underlying Claimant alleged that AY was a motor carrier as defined by 49 CFR 390.5,[1] and that Prionyuk "was the agent, servant, workman, or employee of AY, as defined in 49 CFR 390.5, acting in the course and scope of his agency" at the time of the Underlying Accident. Id. ¶¶ 3-4.  Prionyuk is alleged to have negligently caused the Vehicle to "leave [the] traveled portion of the highway" while Davis was asleep, causing Davis to sustain a variety of injuries. Id. ¶ 8.

22.    The Complaint included two separate counts of negligence against Defendants: one against AY and one against Prionyuk.  Under Count I, Plaintiff alleged generally that Prionuk failed to maintain control of the vehicle and failed to abide by various FMCSR rules and regulations related to service hours, fatigue, and maintenance of logs. Id. at ¶ 15.  Under Count II,

---

[1] The Department of Transportation, Federal Motor Carrier Safety Administration Regulations are codified under Title 49, Part 390. These regulations are often referred to by their short-hand title, FMCSR. Under FMCSR definitions, "For-hire motor carrier means a person engaged in the transportation of goods or passengers for compensation." 49 C.F.R. § 390.5.

Plaintiff alleged Prionyuk operated the vehicle "under the direction and control of AY," and that AY "knew…or should have known" that Prionyuk was operating the vehicle while fatigued and in violation of various FMCSR rules and regulations. Id. at ¶¶ 18-22.

23.     Answers to the Complaint were filed by Counsel for AY and Prionyuk separately on January 10, 2019.   See Defendants' Answers to Complaint in the Davis Action attached collectively hereto as **Exhibit B**.

### Relevant Facts Adduced During Discovery in the Davis Action

24.     AY is engaged in the business of leasing tractor-trailer vehicles, like the Vehicle in this case, to independent-contractor drivers such as Prionyuk.

25.     Prionyuk created a company called "A-Pro Trans, LLC" ("A-Pro Trans"), which executed an Independent Contractor Agreement with a company called "AY Management, Inc." ("AY Management").   See Independent Contractor Agreement attached hereto as **Exhibit C**. Article VI, Paragraph 3 of the Independent Contractor Agreement calls for A-Pro Trans to indemnify and hold AY Management harmless "from any and all claims by…[A-Pro Trans] drivers drivers' helpers, agents, and any other workers used by it in connection with Contractor's performance under this Agreement."  Id. at 5.  Furthermore, Article V, Paragraph 4 states: "It is further agreed that any…bodily injury…sustained by [A-Pro Trans] drivers…as well as authorized or unauthorized passengers…**will be the sole responsibility of Contractor**."  Id.

26.     AY Management is an active registered Corporation in Pennsylvania, and A-Pro Trans is an active registered Limited Liability Company in Pennsylvania—both of which are distinct from Defendant AY.  See Department of State Webpages attached hereto as **Exhibit D**.

27.     Importantly, neither A-Pro Trans or AY Management were ever joined as a party in the Davis Action.   Therefore, it remains unclear (1) whether A-Pro Trans and/or AY

Management maintained separate insurance coverage at the time of this loss; and (2) whether there were any written agreements in effect between Defendant AY and these two entities.

28.     Unlike Prionyuk, Underlying Claimant Davis did not execute any Independent Contractor Agreement with AY.  According to his deposition testimony, Underlying Claimant Davis worked as a commercial truck driver "primarily through a staffing agency" since 2015, and first worked as an "assistant driver" for Travis Gaston, another independent contractor for Defendant AY.  Under this arrangement, independent-contractor drivers were authorized to select any qualified assistant driver of their choosing and were responsible for paying a portion of their share to that assistant driver.  However, Underlying Claimant testified that he was not assigned to this particular trip leading to the Underlying Accident via a staffing agency.  Rather, Underlying Claimant testified that he was the "lead driver," and Prionyuk was assigned by AY to be the "assistant driver."

### Underlying Claimant's Expert Report

29.     Underlying Claimant produced a liablity expert report dated December 23, 2019 authored by Brooks Rugemer, CDS, a commercial transportation specialist.  See Mr. Rugemer's Expert Report attached hereto as **Exhibit E**.

30.     Mr. Rugemer concluded that AY Trucking had a "regulatory duty" to properly vet, hire and supervise any driver it allows to operate its trucks pursuant to Section 392.1 of the FMCSR.  Id. at 7.  Mr. Rugemer clarified that this responsibility is extended to "independent contractors" who are considered "employees" under the FMCSR definitions (Section 390.5).  Id. at 7-8.

31.     Mr. Rugemer also concluded that Prionyuk "fell asleep," was careless, and his actions fell below the appropriate standard of care. Id. at 10.  Underlying Claimant's expert further

opined that AYT "failed to properly hire, qualify and manage Prionyuk," willfully failed to supervise him, and that AYT's actions fell below the standard of care for a DOT registered interstate Motor Carrier. Id.   Finally, Mr. Rugemer asserted that "AYT's actions were a contributory factor in the crash that injured Eric Davis." Id.

### AY and Prionyuk's Motion for Summary Judgment in the Davis Action

32.   After the issuance of Underlying Claimant's expert report authored by Mr. Rugemer, which argued that Underlying Claimant was an "employee" of AY under the FMCSR, AY and Prionyuk filed a Motion for Summary Judgment seeking dismissal of the Davis Action. See Defendants' Motion for Summary Judgment in the Davis Action attached hereto as **Exhibit F**.

33.   In their Motion for Summary Judgment, Defendants argued that Underlying Claimant Davis *and* Prionyuk were *both* the employees or "statutory employees" of AY because Mr. Rugemer classified Underlying Claimant as an "independent contractor," which qualifies as an employee under the FMCSR.  See id.  Accordingly, Defendants contested they were immune from tort liability under Pennsylvania's exclusive remedy and statutory employer immunity doctrines. Id.

34.   Underlying Claimant opposed Defendants' Motion for Summary Judgment, arguing that Mr. Rugemer's conclusion that Underlying Claimant was an "independent contractor" under the FMCSR established the duty of care owed to Underlying Claimant, but did not establish an employee-employer relationship between the litigants.  See generally Underlying Claimant's Opposition to Summary Judgment in the Davis Action attached hereto as **Exhibit G**.

35.   Ultimately, the trial court denied the Defendants' Motion without prejudice. See Court Order dated February 20, 2020 attached hereto as **Exhibit H**.

36.     Based on the summary judgment arguments in the Davis Action, Underlying Claimant is either an "employee" under the common law, or an "independent contractor" under the FMCSR.    Under either scenario, Underlying Claimant is an "employee" of AY (the named insured) and/or Prionyuk (a definitional insured) for purposes of liability coverage, so coverage should not be available to Underlying Claimant under the Excess Policy.

### Overview of the Relevant Insurance Policies

37.     AY is the named insured on two policies relevant here.

38.     First, AY is the named insured on a Commercial Automobile Insurance Policy with American Alternative, Policy Number H8A2TP0000264-01 ("the Primary Policy"), with relevant policy period from June 14, 2016 through June 14, 2017.  See AY's Primary Policy with American Alternative attached hereto as **Exhibit I**.

39.     Upon information and belief, American Alternative extended coverage to Prionyuk under the Primary Policy as a permissive user of the Vehicle involved in the Underlying Accident.

40.     The Vehicle is listed on the Declarations Page of the Primary Policy as Covered Auto #23.  See Schedule of Covered Automobiles under the Primary Policy attached hereto as **Exhibit J** at 5.  The Primary Policy limits for the Vehicle in question is $1,000,000.  Id.

41.     In addition to the American Commercial Automobile Policy, AY is also the named insured under a Commercial Umbrella and Excess Liability Insurance Policy issued by Great American ("the Excess Policy").  See AY's Excess Policy attached hereto as **Exhibit K**.  The Excess Policy provides $2,000,000 in liability insurance as an additional layer of coverage.  Id.

42.     Importantly, the omnibus coverage provision in the Excess Policy specifically states that "[e]xcept for the terms, conditions, definitions and exclusions of this policy, the coverage provided by this policy will follow the 'first underlying insurance.'"  See Excess Liability

Coverage Form for the Excess Policy attached hereto as **Exhibit L**. Thus, unless stated otherwise, coverage under the Excess Policy generally comports with coverage under the Primary Policy.

### **Overview of Applicable Coverage Defenses Under the Primary Policy**

43.     The Primary Policy provides coverage to an "insured" because of "bodily injury" caused by an "accident" resulting from the ownership, maintenance of or use of a covered "auto." <u>See</u> Motor Carrier Coverage Form under the Primary Policy attached hereto as **Exhibit M** at 2. Therefore, based on the circumstances of the Underlying Accident, coverage under the Primary Policy depends on (1) who qualifies as "an insured"; and (2) whether any exclusions apply that render the Underlying Accident an uncovered loss.

44.     Under the Primary Policy, there are three potential defenses to coverage that American Alternative should have reserved and/or raised at the outset.[2] It is now apparent that at least one—if not all three—would apply to foreclose coverage in this matter.

45.     The first coverage defense depends on whether Prionyuk qualifies as a "motor carrier for hire" under the Primary Policy. If he does not qualify as such, he remains an insured.

46.     However, even if Prionyuk qualifies as an insured under the Primary Policy, there are two additional employment-related exclusions which would warrant a disclaimer of coverage by American Alternative. The second and third coverage defenses, respectively, depend on whether Underlying Claimant Davis and/or Prionyuk meet the definition of "employee" under the Primary Policy for purposes of triggering two exclusions therein.

---

[2] American Alternative's failure to raise a coverage defense based on provisions in the Primary Policy does not estop Great American from asserting defenses to excess liability coverage; in other words, Great American is not bound by American Alternative's prior coverage position(s). <u>See, e.g.</u>, <u>Pratter v. Reliance Ins. Co.</u>, No. 269 M.D. 2001, 2010 Pa. Commw. LEXIS 733, at *19 (Pa. Commw. Ct. Dec. 27, 2010) (citing <u>Allmerica Fin. Corp v. Certain Underwriters at Lloyd's, London</u>, 871 N.E.2d 418, 429 (Mass. 2007)). Thus, Great American is free to raise coverage defenses based upon the language of the Primary Policy—whether those were raised or reserved by American or not.

47.     More specifically, if Underlying Claimant is an "employee" of AY or Prionyuk, Exclusion No. 4 would be triggered and there would be no coverage.

48.     Likewise, if Underlying Claimant and Prionyuk can reasonably be described as "fellow employees," Exclusion No. 5 would triggered and there would be no coverage.

**"Who Is An Insured" Under the Primary Policy**

49.     The Primary Policy defines an "insured" to include:

> *a. You [AY] for any covered "auto".*
> *b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:*
> > *[exceptions 1-5 do not apply].*

<u>See</u> **Exhibit M** at 3.

50.     The "Who is an Insured" Section of the Primary Policy also includes the following qualifier:

> *However, none of the following is an "insured.":*
>
> > *(1) Any "motor carrier" for hire or his or her agents or "employees", other than you and your employees:*
> >
> > > *(a) If the "motor carrier" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.*
> > >
> > > *(b) If the "motor carrier" is not insured for hired "autos" under an "auto" liability insurance form that insures on a primary basis the owners of the "autos" and their agents and "employees" while the "autos" are leased to that "motor carrier and used in his or her business.*
> >
> > *However, Paragraph (1) above does not apply if you have leased an "auto" to the for-hire "motor carrier" under a written lease agreement in which you have held that "motor carrier" harmless.*

<u>Id.</u>

51.     Based on the above, Prionyuk would *not* qualify as an insured if: (1) he meets the definition of "motor carrier" for hire under the Policy; *and* (2) he is not insured by a separate auto liability policy which includes coverage for AY on a primary basis; *but only if* (3) there is no "hold harmless" provision in favor of Prionyuk contained within a lease agreement with AY.

52.     Here, Prionyuk qualifies as a "motor carrier" for hire under the Policy because he was hired by AY to transport a fleet of Teslas in furtherance of AY's business.[3]  Furthermore, upon information and belief, Prionyuk did not maintain a separate auto liability policy purchased with primary coverage for AY; and there was no lease agreement between Prionyuk and AY. Therefore, Prionyuk does not qualify as an insured under the Primary Policy, American Alternative should have disclaimed coverage to him at the time the Davis Action was instituted, and Great American need not provide excess liability coverage to Prionyuk for the claims asserted against him arising out of the Underlying Accident.

53.     Even if Prionyuk does not constitute a "motor carrier for hire," coverage for damages arising out of the Underlying Accident are precluded because both Prionyuk and Plaintiff can be deemed "employees" under two employment-related exclusions of the Primary Policy explained in further detail below.

### Exclusions Nos. 4 and 5 Under the Primary Policy

54.     Under Exclusion 4 – Employee Indemnification and Employer's Liability (the "Employer's Liability Exclusion"), the Primary Policy precludes coverage for bodily injury to:

*a. An "employee" of the "insured" arising out of and in the course of:*
  *(1) Employment by the "insured"; or*
  *(2) Performing the duties related to the conduct of the "insured's" business…*

See **Exhibit M** at 4.

---

[3] The Primary Policy defines "Motor Carrier" as follows: "a person or organization providing transportation by 'auto' in the furtherance of a commercial enterprise."  See **Exhibit M** at 14.

55.     In the same vein, Exclusion 5 – Fellow Employee (the "Fellow Employees Exclusion") of the Primary Policy precludes coverage for bodily injury to:

> *a. Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business…*

Id. at 4-5.

56.     Section 390.5 of the FMCSR provides a statutory definition of "employee" as follows:

> ***Employee*** *means any individual, other than an employer, who is employed by an employer and who in the course of this or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including **an independent contractor** while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler.*

49 C.F.R. § 390.5 (emphasis added).

57.     Based on the above-cited language, Section 390.5 collapses the common law distinction between employees and independent contractor-drivers in the commercial trucking context.

58.     The application of the Employer's Liability Exclusion and the Fellow Employees Exclusion to the Underlying Accident turns on whether (a) Plaintiff is an "employee" of AY or Prionyuk; and/or (b) Plaintiff and Prionyuk can reasonably be described as "fellow employees."

59.     Hence, **the controlling question is whether Great American can rely on the FMCSR's definition of an "employee" for purposes of triggering the aforementioned exclusions as applied to the claims against *both* AY and Prionyuk in the Davis Action.**[4]

---

[4] The Primary Policy's definition of an employee includes a leased worker but does not include a temporary worker. See **Exhibit M** at 13.  A "leased worker" refers to "a person leased to you [AY] by a labor leasing firm under an agreement between you [AY] and the labor leasing firm to perform duties related to the conduct of your business." Id. at 14.  The Policy differentiates a "leased worker" and a "temporary worker," which is "a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions."  Id. at 15.

13

60.     Although neither Pennsylvania nor the Federal District Courts in the 3rd Circuit have squarely addressed this issue, many State and Federal courts confronted with the issue have held that an insurer may rely on the FMCSR definition of an employee to trigger an employment-related exclusion.  See, e.g., Consumers County Mut. Ins. Co. v. P.W.& Sons Trucking, Inc., 307 F.3d 362 (5th Cir. 2002) (holding insurer could rely on FMCSR definition of an "employee" to exclude coverage to independent contractor-drivers); Miller v. Northland Ins. Co., No. M2013-00572-COA-R3-CV, 2014 Tenn. App. LEXIS 248 (Tenn. Ct. App. Apr. 29, 2014) (holding the FMCSR definition of "employee" rendered an independent contractor an "employee" within the meaning of policy exclusion).

61.     Importantly, the Primary Policy contains an MCS-90 Endorsement, which is one of the ways in which a motor carrier such as AY can establish proof of financial responsibaility under the Motor Carrier Act of 1980 ("MCA").  See MCS-90 Endorsement to Primary Policy attached hereto as **Exhibit N**.

62.     In this instance, AY purchased the MCS-90 Endorsement to the Primary Policy to satisfy the MCA financial responsibility requirements.

63.     The MCS-90 Endorsement serves as a "safety net" in the event the Primary Policy itself does not cover a given loss, and either there is no other insurance that would satisfy a judgment against the motor carrier, or the motor carrier's insurance coverage is insufficient.  See, e.g., Consumers County, 307 F.3d at 366 (stating the purpose of the MCS-90 Endorsement is "to ensure that a financially responsible party will be available to compensate members of the public injured in a collision with a commercial motor vehicle.").

64.     The Excess Policy necessarily does not contain an MCS-90 Endorsement because the Primary Policy provides this "safety net."

65.     Because the specific purpose of the MCS-90 Endorsement is to assure compliance with the MCA, it logically follows that the FMCSR definition of an "employee" should guide the interpretation of the Employer's Liability and Fellow Employees Exclusions—and more specifically the construction of the Primary Policy term, "employee."   See, e.g., Consumers County, 307 F.3d at 366 (stating that the federal insurance requirements "must inform our interpretation of the policy's terms"); Miller, 2014 Tenn. App. LEXIS 248 at *9-10 (citing cases in which a co-driver passenger qualifies as an "employee" under an insurance policy after considering purpose of MCS-90 Endorsement).

66.     If the Court uses the FMCSR's definition of an "employee" as a guidepost, the inescapable conclusion is that both Underlying Claimant and Prionyuk—as independent contractors—qualify as employees of AY.  Accordingly, the Employer's Liability and Fellow Employees Exclusion renders the Underlying Accident and subsequent Davis Action as uncovered losses under the body of the Primary Policy.

67.     However, the fact that the body of the Primary Policy does not cover the damages in the Davis Action does not prevent Underlying Claimant from being adequately compensated, for American Alternative has already offered its policy limits to indemnify AY for the injuries Mr. Davis sustained in the Underlying Accident.

**Overview of Coverage Defenses Under the Excess Policy**

68.     Great American also seeks a determination that it owes no indemnification obligation for the damages arising out of the Underlying Accident and the Davis Action based on two additional coverage defenses: (1) the cross-suits exclusion; and (2) late notice of the Underlying Accident and the Davis Action, which has resulted in actual prejudice to Great American.

69.     First, the cross-suits exclusion would apply to the extent Plaintiff is deemed an insured under the Excess Policy.  This would prevent him from suing another insured, such as AY and Prionyuk.

70.     Second, AY failed to provide timely notice of the Underlying Accident despite the severity of the damages alleged.  Critically, AY, its counsel, and American Alternative failed to provide timely notice of the Davis Action even though Underlying Claimant communicated a demand in excess of the Primary Policy limits no later than February 5, 2019.  Notice of Underlying Claimant's $2,000,000 demand was provided to Great American on January 17, 2020, over a year after the demand was communicated to AY and its counsel by Underlying Claimant's counsel, who explicitly requested that Great American be placed on notice.

71.     As a result of AY's failure to provide notice of the Davis Action despite a demand which would require tendering a portion of benefits under the Excess Policy, Great American has been actually prejudiced as pled more specifically below.

**<u>Cross-Suits Exclusion Under the Excess Policy</u>**

72.     The Excess Policy contains an endorsement entitled "Cross Suits Exclusion," which modifies liability coverage to exclude "[a]ny liability or 'loss' of any Insured covered under this policy to any other Insured covered under this policy."

73.     The omnibus coverage provision in the Excess Policy specifically states that "[e]xcept for the terms, conditions, definitions and exclusions of this policy, the coverage provided by this policy will follow the 'first underlying insurance.'"  <u>See</u> **Exhibit L**.  Accordingly, the Primary Policy's definition of an "insured" can be transposed onto the Excess Policy.

74.     Under the Primary Policy, an "insured" includes:

"*Anyone else while using with your permission a covered "auto" you own, hire or borrow…*"

16

See **Exhibit M** at 3.

75.     The Excess Policy is amended by way of a "Cross Suits Exclusion" Endorsement, which precludes coverage for "[a]ny liability or 'loss' of any insured covered under this policy to any other insured covered under this policy."  See Cross Suits Exclusion Endorsement attached hereto as **Exhibit O**.

76.     Thus, if Underlying Claimant qualifies as an "insured" under the Primary and Excess Policies, AY would not enjoy coverage for damages alleged in the Davis Action if Davis was "using" the vehicle while he was asleep in the sleeper-berth at the time of the Underlying Accident.  Likewise, if **both** Underlying Claimant **and** Prionyuk qualify as "insureds" under the Primary and Excess Policies, Prionyuk would not enjoy coverage either, if Davis was "using" the vehicle while sleeping in the sleeper-berth at the time of the Underlying Accident.

77.     Underlying Claimant was "using" the Vehicle at the time of the Underlying Acciden because the nature of "co-driving" a tractor-trailer under an independent contractor-lease agreement required both Davis and Prionyuk to take breaks from driving.  See **Exhibit E** at 7 (citing federal regulations prohibiting drivers from operating a commercial vehicle if driver's ability or alertness is unsafely impaired by fatigue); see also Quiles v. Johnson, 906 F.3d 735, 737 (8th Cir. 2018) (holding that plaintiff was in the "course and scope" of employment even though he was asleep and "off duty" during a team driving arrangement).

78.     Therefore, if Underlying Claimant and Prionyuk are both deemed "insureds" under the Primary and Excess Policies, coverage for the damages alleged in the Davis Action would be precluded under the Cross Suits Exclusion Endorsement, which prohibits one insured from suing another for personal injuries.

**Late Notice Prejudiced Great American**

79.     As a precondition to excess liability coverage, the Excess Policy states that AY "must see to it that we are notified as soon as practicable of an occurrence which may result in a claim or suit which may involve this policy."  See **Exhibit L** at 4.

80.     AY must provide notice to Great American as soon as practicable "[i]f a claim or suit against any Insured is reasonably likely to involve this policy."  Id.  The requisite notice generally include information regarding (a) how, when and where the occurrence took place; (b) the names and addresses of any injured persons and witnesses; and (c) the nature and location of any injury or damage arising out of the occurrence."  Id.

81.     Under Pennsylvania law (which applies to the interpretation and construction of the Excess Policy), the failure of a policyholder to comply with the notice requirements in an insurance contract relieves the insurer of liability if the insurer can demonstrate it was prejudiced by the late notice.  See Nationwide Mut. Ins. Co. v. Lehman, 743 A.2d 933, 940 (Pa. Super. Ct. 1999).

82.     By way of his Case Management Conference Memorandum at an early stage of Davis Action, a $2,000,000 demand was communicated for Underlying Claimant's injuries sustained in the Underlying Accident.  Despite this demand exceeding the limits of the Primary Policy, notice was not provided to Great American.

83.     On June 26, 2019, Underlying Claimant's counsel sent a letter to Defendants' counsel explicitly requesting that Great American be placed on notice of the loss, lawsuit, and demand.  See Underlying Claimant's Counsel's June 26, 2019 letter to Defense Counsel attached hereto as **Exhibit P**.

84.     However, Great American did not receive notice of the Underlying Accident, the Davis Action, or the excess demand until January 17, 2020—approximately a year after the initial

excess demand was communicated to Defendants' counsel, and 204 days after Underlying

Claimant's counsel specifically instructed that Great American be placed on notice.

      85.    Due to the late notice of the Davis Action and excess demand, Great American

sustained actual prejudice as follows:

      a.    Great American was not aware of the Davis Action or excess demand until American Alternative already decided to assign counsel to jointly represent AY and Prionyuk;

      b.    Great American was not aware notice of the Davis Action or excess demand until after the Motions for Summary Judgment were resolved;

      c.    Great American was deprived of an opportunity to evaluate the myriad coverage issues discussed herein at an earlier time;

      d.    Great American was deprived of an opportunity to take advantage of its contractual right to be associated with American Alternative in investigating the claim and coordinating the defense of AY and/or Prionyuk.  See **Exhibit K** at 2, Section III.B.

      e.    Underlying defense counsel jointly represented AY and Prionyuk despite an apparent conflict of interest given the clear incentive for one "judgment proof" client (Prionyuk) to shift liability to Great American's named insured (AY);

      f.    Due to the joint representation of AY and Prionyuk, neither asserted crossclaims against one another, thereby increasing the likelihood that Great American's insured would be responsible for the entire judgment, to the extent there would be one;

      g.    Because Great Amreican was not associated with American Alternative in coordinating the defense of AY and/or Prionyuk, underlying defense counsel did not join AY Management and A-Pro Trans as parties in the Davis Action, see supra ¶¶ 22-24; and

      h.    Because Great Amreican was not associated with American Altenrative in coordinating the defense of AY and/or Prionyuk, underlying defense counsel did not investigate whether third parties such as AY Management and A-Pro Trans were separately insured and whether said insurance would have to be exhausted prior to the implication of the Excess Policy in the Davis Action; and

      i.    Because Great Amreican was not associated with American Altenrative in coordinating the defense of AY and/or Prionyuk, underlying defense counsel did not investigate whether third parties such as AY Management and A-Pro

Trans would be liable to Plaintiff under written agreements to which either were a party.

## COUNT I
## DECLARATORY JUDGMENT

### Plaintiff Great American v. Defendants AY and Prionyuk

86.     Plaintiffs hereby incorporate the preceding paragraphs 1-80 of this Declaratory Judgment Complaint as though same were set forth at length herein.

87.     There is a genuine and *bona fide* dispute, controversy, and/or disagreement between the parties regarding whether Defendants are entitled to a defense and indemnity against Underlying Claimant's claims under the terms of the Excess Policy.

88.     The Excess Policy incorporates by reference many of the terms, limitations, and exclusions of the Primary Policy, and under Pennsylvania law, Great American may raise coverage defenses based on the terms, limitations, and exclusions of coverage contained in both the Excess and Primary Policies.  Pratter v. Reliance Ins. Co., No. 269 M.D. 2001, 2010 Pa. Commw. LEXIS 733, at *19 (Pa. Commw. Ct. Dec. 27, 2010) (citing Allmerica Fin. Corp v. Certain Underwriters at Lloyd's, London, 871 N.E.2d 418, 429 (Mass. 2007)).

89.     American Alternative failed to raise any of the coverage defenses articulated herein, and is thereby estopped from asserting them now because of its ongoing defense of AY and Prionyuk in the Davis Action.  See generally Selective Way Ins. Co. v. Mak Services, Inc., 232 A.3d 762, 768 (Pa. Super. Ct. 2020) (holding insurer must timely investigate claim and assert specific reasons that would render claim uncovered or risk being estopped from asserting those defenses).

90.     Federal courts have continually held that such disputes, over the applicability and scope of coverage provided under an insurance policy, are ripe for determination by declaratory

judgment.  ACandS, Inc., 666 F.2d at 822-23; Yellowbird Bus Co. v. Lexington Ins. Co., 2010

U.S. Dist. LEXIS 69554, at *10-11.

 **WHEREFORE**, pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201

and 2202, Plaintiff requests that this Honorable Court issue a judgment declaring that:

a) Prionyuk is a "motor carrier for hire" within the meaning of the American Alternative Policy, thereby excluding him from being classified as an "insured" and precluding coverage for the Underlying Accident under the Excess Policy; or, in the alternative,

b) Prionyuk and Plaintiff are both "insureds" and "employees" of AY, thereby excluding coverage for the Underlying Accident by virtue of the Employer's Liability Exclusion of the Primary Policy and/or the Fellow Employees Exclusion of the Primary Policy; or, in the alternative,

c) Prionyuk and Plaintiff are both "insureds" under the Primary and Excess Policies, thereby excluding coverage for the Underlying accident by virtue of the Cross Suits Exclusion Endorsement of the Excess Policy; or, in the alternative,

d) The late notice provided to Plaintiff actually prejudiced Great American, thereby foreclosing coverage for the Underlying Accident under the Excess Policy.

Respectfully submitted,

**Langsam Stevens Silver & Hollaender LLP**

Dated: April 16, 2021 **By:** /s/ *Charles M. Adams*

Charles M. Adams, CPCU, Esquire
Pa. Identification No. 310405
Benjamin C. Frommer, Esquire
Pa. Identification No. 319993
1818 Market Street, Suite 2430
Philadelphia, PA 19103
T : 215-732-3255
F : 215-732-3260
E: CAdams@lssh-law.com
E: BFrommer@lssh-law.com
*Attorneys for Plaintiff*